Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| DAVID A. FLORES CABÁN<br><br>Recurrido<br><br>V.<br><br>MUNICH, LLC. Y OTROS<br><br>Recurrente | KLRA202400061 | Revisión Administrativa procedente del Departamento de Asuntos del Consumidor (DACO)<br><br>Casos Núm. SAN-2023-0015396<br><br>Sobre: Compraventa de Vehículo de Motor |

Panel integrado por su presidente, el Juez Sánchez Ramos, Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de marzo de 2024.

Comparece Munich, LLC. (en adelante, Munich o parte recurrente), mediante recurso de revisión en el que nos solicita que revoquemos la *Resolución Núm. SAN-2023-0015396* dictada y notificada el 19 de diciembre de 2023, por el Departamento de Asuntos del Consumidor de Puerto Rico (en adelante, DACO).[1] En dicha determinación, el DACO decretó la rescisión del contrato de venta entre el señor David A. Flores Cabán (en adelante, señor Flores Cabán o recurrido) y Munich. Ello, al concluir que la parte recurrente incurrió en dolo grave al momento de la contratación, lo que vició el consentimiento del señor Flores Cabán.

Por los fundamentos que expondremos a continuación, *confirmamos* la determinación recurrida. Explicamos.

**-I-**

El 10 de abril de 2023, el señor Flores Cabán y Munich suscribieron un contrato de compraventa referente a un vehículo de

---

[1] Apéndice del *Recurso de revisión administrativa* de Munich, págs. 1-14.

motor usado, un BMW del año 2021 con 3,693 millas, por un valor de $64,995.00.[2] Como parte del acuerdo, el señor Flores Cabán entregó otro vehículo de motor BMW del año 2019, con 36,655 millas. Este vehículo tenía una deuda pendiente de $36,439.74, la cual fue asumida por el concesionario. Además, el recurrido adquirió una garantía extendida de Veritas Global Protection (en adelante, Veritas) por $4,150.00, la cual fue incluida en el precio final del vehículo, debido a que este auto no contaba con la garantía del fabricante.[3] Esta nueva garantía tiene vigencia hasta el 11 de mayo de 2028. Por último, la transacción entre el señor Flores Cabán y Munich fue financiada a través del Pentagon Federal Credit Union (en adelante, PenFed) por un total de $87,418.64, con un interés del 10%, y el plazo de pago se extendió hasta el 26 de abril de 2029.[4]

Como parte del proceso de la compraventa, el recurrido firmó varios documentos, incluyendo la *Nota aclaratoria*, la *Garantía con el fabricante* y la *Declaración de impacto*.[5] A través de estos documentos, el señor Flores Cabán afirmó, entre otras cosas, que: (1) verificó y realizó una prueba de manejo del vehículo, confirmando que todo estuvo bien al momento de la compra; (2) fue informado sobre la posibilidad de que el vehículo fue utilizado para renta diaria, fue adquirido en pública subasta o perteneció a una compañía, y que pudo haber sido sometido a reparaciones de mecánica, hojalatería y pintura; (3) reconoce que el vehículo puede tener etiquetas reasignadas por la Unidad de Vehículos Hurtados del Departamento de la Policía de Puerto Rico; (4) entiende que Munich no es responsable de la garantía que pudiera tener o no el vehículo con el fabricante; (5) es responsable de verificar con el fabricante de

---

[2] *Íd.*, pág. 72.
[3] *Íd.*, pág. 81.
[4] *Íd.*, págs. 75-77.
[5] *Íd.*, págs. 83-85.

la unidad la vigencia que pudiera tener la garantía original; (5) reconoce que Munich únicamente es responsable de la garantía que concede, conforme al reglamento aplicable a vehículos usados emitido por el DACO; y (7) Munich le brindó setenta y dos (72) horas a partir de la fecha de la compra para inspeccionar minuciosamente el vehículo.

Así las cosas, durante el mes de mayo de 2023, el recurrido percibió ruidos en el vehículo adquirido.[6] Por este motivo, presentó una reclamación ante el concesionario, Munich. No obstante, la parte recurrida le instruyó al señor Flores Cabán que se comunicara directamente con su proveedor de garantía, la compañía Veritas, para abordar el problema experimentado con el vehículo.[7]

En vista de lo anterior, el 17 de mayo de 2023, el recurrido llevó su vehículo a Carauto, uno de los talleres autorizados para brindar servicios bajo la garantía ofrecida por Veritas. El taller inspeccionó la unidad y proporcionó un estimado para las reparaciones necesarias y las piezas requeridas, según los defectos encontrados.[8] El costo estimado de las reparaciones ascendió a $14,048.51. En consecuencia, el señor Flores Cabán presentó la reclamación correspondiente ante Veritas basada en este presupuesto.

Además de esto, el señor Flores Cabán optó por llevar su vehículo a Autogermana. Durante este proceso, le informaron que, **según sus registros, el automóvil había estado involucrado en un accidente anterior y había sido declarado "pérdida total" por el Seguro Triple-S**.[9] Por estas razones, el vehículo no estaba cubierto por la garantía del fabricante.

---

[6] *Íd.*, pág. 45.
[7] *Íd.*, págs. 45, 47 y 49.
[8] *Íd.*, págs. 82.
[9] *Íd.*, págs. 78-80.

De otro lado, el 30 de mayo de 2023, Veritas notificó al señor Flores Cabán que su solicitud de garantía, identificada con el número C1001112226 y gestionada a través de Carauto, fue denegada. Esta decisión se basó en el hecho de que **la unidad estuvo involucrada en una colisión, lo que hace que la reparación no sea elegible para la cobertura**, según los términos del contrato de servicios entre el recurrido y Veritas.[10]

Dada la situación descrita, el señor Flores Cabán presentó una segunda reclamación ante Munich, solicitando esta vez un cambio de vehículo.[11] Sin embargo, la parte recurrente reiteró que recurriera a su garantía extendida o acudiera al DACO.[12]

Ante la negativa de la parte recurrente de efectuar el cambio de unidad, el 5 de junio de 2023, el señor Flores Cabán instó una querella ante el DACO contra Munich y PenFed.[13] En esta, argumentó que el referido vehículo comenzó a exhibir ruidos dos semanas después de su adquisición, requiriendo el uso de la garantía extendida para obtener servicios. Sin embargo, estos servicios fueron denegados por la garantía, dado que previamente la guagua había sido impactada y declarada "pérdida total". Asimismo, sostuvo que fue engañado al no ser informado sobre el estado real del vehículo antes de la compra. Por tanto, el recurrido solicitó que el DACO ordenara la resolución del contrato de compraventa del vehículo y la devolución del dinero abonado, incluyendo el financiamiento.

El 19 de septiembre de 2023, el DACO celebró una vista adjudicativa para considerar las alegaciones en su totalidad. Durante el transcurso del procedimiento, todas las partes estuvieron representadas por abogados y presentaron pruebas

---

[10] Apéndice de la *Moción en cumplimiento de orden*, pág. 1.
[11] Apéndice del *Recurso de revisión administrativa* de Munich, pág. 47.
[12] *Íd.*
[13] *Íd.*, págs. 25-32.

documentales y testimoniales. Como parte de los testimonios, **el señor Flores Cabán aseguró que no hubiera adquirido el vehículo si hubiera sabido que previamente fue declarado "pérdida total" por el seguro**.[14] No obstante, admitió que, a pesar de haber firmado los documentos relacionados con la compraventa, no inspeccionó ni llevó la unidad a un mecánico para su evaluación una vez la adquirió. Esto se debió a la confianza depositada en el señor Alcides Márquez Villanueva, presidente de Munich, para realizar este tipo de transacciones.[15]

Por otro lado, el señor Márquez Villanueva, declaró que le informó al recurrido que la unidad no contaba con garantía del fabricante y que había sido sometida a trabajos de hojalatería debido a un impacto anterior.[16] De la misma manera, afirmó que desconocía la procedencia exacta del vehículo, incluido el hecho de que había sido declarado como "pérdida total", ya que fue adquirido en una subasta.[17]

El 19 de diciembre de 2023, el DACO emitió una *Resolución* en la que decretó la rescisión del contrato de compraventa entre el señor Flores Cabán y Munich.[18] En su dictamen, concluyó que la parte recurrente incurrió en dolo grave durante la contratación, lo que vició el consentimiento del señor Flores Cabán. Para respaldar su decisión, el DACO señaló que, aunque Munich le informó al recurrido que la unidad fue impactada y reparada en un lugar de hojalatería, **no le informó que fue declarada "pérdida total" por el seguro**. Precisó que, de los documentos suscritos por el recurrido, como la *Nota aclaratoria*, la *Garantía con el fabricante* y la *Declaración de impacto*, **no surge que la unidad fue declarada "pérdida total" debido al impacto sufrido.** La agencia agregó que

---

[14] *Íd.*, págs. 52 y 62.
[15] *Íd.*, págs. 53 y 60.
[16] *Íd.*, págs.66-67.
[17] *Íd.*, pág. 70.
[18] *Íd.*, págs. 1-14.

Munich, al ser experto en la venta de autos, debió saber que, al adquirir el vehículo en pública subasta, sin la garantía del fabricante, era necesario notificarle al señor Flores Cabán, **verbalmente y por escrito**, que la unidad que estaba adquiriendo carecía de dicha garantía debido a la declaración de "pérdida total" por parte del seguro original. Por consiguiente, concluyó que el recurrido consintió sin estar debidamente informado.

Como parte de la decisión administrativa, el DACO dispuso que: (1) Munich reembolsara al señor Flores Cabán todas las mensualidades que ha abonado hasta el momento a la institución que financió la transacción, PenFed; (2) al referido reembolso se le aplicará el interés legal correspondiente a la suma de dinero desde el momento en que se ordenó el pago hasta que se satisfaga completamente; (3) la parte recurrente cubrirá todos los pagos que PenFed realice al señor Flores Cabán como resultado de la nulidad del contrato de compraventa; y (4) Munich liquidará el saldo pendiente que el señor Flores Cabán tenga con PenFed para liberarlo de su deuda con dicha entidad financiera. Una vez que Munich cumpla con las disposiciones del DACO, el recurrido deberá entregar el vehículo descrito previamente a las partes querelladas.

Inconforme con la determinación administrativa, el 26 de diciembre de 2023, la parte recurrente presentó una *Reconsideración.*[19] Sin embargo, el DACO no actuó dentro de los quince (15) días establecidos para su consideración, por lo que fue rechazada de plano, conforme la Sección 3.15 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9655, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU).

---

[19] *Íd.,* págs. 15-24.

Finalmente, el 6 de febrero de 2024, Munich compareció ante nosotros e imputó la comisión de los siguientes errores:

**Primer error:** Erró el DACO al admitir evidencia que no fue autenticada y carece de garantías de confiabilidad. Dicha evidencia tampoco fue notificada a las partes, según requerido por el Reglamento de Procedimientos Adjudicativos del DACO.

**Segundo error:** Erró el DACO al concluir que hubo dolo grave.

**Tercer error:** Erró el DACO al no considerar que el contrato de financiamiento con Pentagon no es un contrato de venta condicional a plazos.

Para sustentar su posición, Munich argumentó que el DACO admitió de forma errónea el documento que aparentemente preparó Autogermana, a pesar de la objeción presentada durante la vista administrativa.[20] En concreto, señaló que la jueza administrativa admitió el documento como *Exhibit* antes del inicio del desfile de prueba, es decir, sin que el recurrido lo hubiera ofrecido como evidencia a su favor. Además, expuso que el documento lleva la fecha del 23 de abril de 2021, no está firmado por ninguna persona y fue alterado en la parte superior, ya que se borró el nombre de la persona a quien está dirigido. Sostuvo que los principios fundamentales de las Reglas de Evidencia podrán utilizarse en estos procesos administrativos mientras no sean incompatibles con la naturaleza de los mismos.

Asimismo, alegó que el documento de Autogermana constituye prueba pericial, toda vez que contiene opiniones de uno o varios técnicos mecánicos sobre el estado de la unidad. Por lo tanto, para que el testimonio pericial contenido en la hoja de reparación en cuestión fuera admisible, debió haber sido notificado como informe pericial y notificado a las partes y al DACO con al menos treinta (30) días de anticipación a la fecha de la vista administrativa. Sin embargo, nada de esto ocurrió en este caso, por

---

[20] *Íd.*, págs. 78-80.

lo que la agencia incumplió con la Regla 20.6 de su propio reglamento, el Reglamento de Procedimientos Adjudicativos del Departamento de Asuntos del Consumidor. Por todas estas razones, Munich concluyó que la indebida admisión del documento como evidencia por parte del DACO vició el procedimiento administrativo.

Por otro lado, alegó que no hubo evidencia que respaldara que Munich conocía que la unidad fue declarada "pérdida total" previo a la compraventa. Por el contrario, la prueba desfilada ante el DACO demostró que Munich divulgó todas las condiciones que conocía sobre la unidad al momento de la venta, incluyendo que había sufrido un impacto, que había sido sometida a reparaciones de hojalatería y pintura, y que no tenía garantía del fabricante. A pesar de esta información, el señor Flores Cabán decidió adquirir la unidad.

Por último, la parte recurrente resaltó que el señor Flores Cabán no presentó ninguna alegación contra PenFed, por lo que cualquier reclamación en contra de esta parte debió ser desestimada. Ahora bien, indicó que, en caso de proceder la rescisión del contrato, la obligación de Munich se limitaría a devolver la cantidad recibida de parte del señor Flores Cabán, es decir, la suma de $64,995.00, independientemente del monto del préstamo concedido por PenFed. Esto se debe a que Munich no puede reembolsar al recurrido más de lo recibido, ya que esta medida no está contemplada en el Código Civil como una forma válida de restitución. Según el Código Civil, las partes deben devolver las prestaciones recibidas, y en este caso, la prestación recibida por Munich fue de $64,995, ni más ni menos.

En respuesta, el señor Flores Cabán presentó su *Oposición a recurso de revisión administrativa.* Como parte de sus argumentos, cuestionó tanto el primer como el segundo señalamiento de error. Fundamentó que el 2 de septiembre de 2023, envió por correo

electrónico a Munich todos los documentos que pretendía presentar como evidencia para la vista adjudicativa. Entre estos documentos incluyó el proporcionado por Autogermana. Sin embargo, la parte recurrente tuvo la oportunidad de impugnar la autenticidad del documento proporcionado, pero no lo hizo. Asimismo, argumentó que Munich pudo haber involucrado a Autogermana en el caso, pero tampoco lo hizo. Agregó que PenFed tampoco objetó la autenticidad ni la admisibilidad del documento; de hecho, afirmó haberlo recibido por correo electrónico. Por tanto, sostuvo que Munich no puede plantear este argumento por primera vez ante el Tribunal de Apelaciones. Respecto al segundo error, el recurrido manifestó que, dada la experiencia del vendedor en el mercado de ventas de automóviles, éste debió conocer que el vehículo había sido declarado "pérdida total", lo que implica dolo grave.

Por su parte, el 7 de marzo de 2024, PenFed presentó la *Posición de Pentagon Federal Credit Union en torno a Recurso de Revisión Administrativa.* En esta moción, cuestionó el último señalamiento de error planteado por Munich. En síntesis, alegó que el DACO nunca cometió el tercer error, ya que la agencia no determinó que el contrato era un contrato de venta al por menor a plazos. De hecho, afirmó que el DACO no tiene ninguna resolución que hacer respecto al contrato de préstamo entre PenFed y el señor Flores Cabán, ya que la querella no incluyó ninguna alegación contra dicha entidad. Aclaró que la única razón por la que PenFed fue incluida en el litigio fue para que esta pudiera emitir una certificación con la información del historial de pagos y el saldo adeudado, para poder eximir al recurrente de su obligación con la entidad financiera en caso de que se anulara el contrato de compraventa entre Munich y el señor Flores Cabán, como efectivamente ocurrió.

Del mismo modo, la institución financiera sostuvo que el contrato entre el señor Flores Cabán y PenFed es un contrato de préstamo, que es independiente y separado del contrato de compraventa. En virtud de este contrato, otorgó al recurrido la suma de $64,995.00, y a cambio, el señor Flores Cabán se comprometió a reembolsar dicho monto, más intereses y cualquier otro cargo acordado. Por lo tanto, la restitución de las prestaciones implicaría que Munich devuelva al recurrido el total de las mensualidades pagadas a PenFed en concepto del préstamo concedido para la compra del vehículo, incluyendo los intereses. Además, corresponde que Munich pague el balance de cancelación del préstamo a favor de PenFed para liberar al recurrente de su deuda.

Con el beneficio de la comparecencia de las partes, procedemos a discutir las normas jurídicas aplicables a este recurso.

-II-

-A-

Es norma conocida que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Oficina de Ética Gubernamental v. Martínez Giraud*, 210 DPR 79, 88-89. (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010). Por estas razones, dichas determinaciones suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Oficina de Ética*

*Gubernamental v. Martínez Giraud, supra; Batista, Nobbe v. Jta. Directores,* 185 DPR 206, 216 (2012). No obstante, tal norma no es absoluta, por lo que nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

Por esa misma línea, en *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> *Los tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.*

Del mismo modo, la Sección 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), estableció el marco de revisión judicial de las agencias administrativas. *Rolón Martínez v. Supte. Policía, supra.* La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.; Oficina de Ética Gubernamental v. Martínez Giraud, supra; Torres Rivera v. Policía de*

*PR, supra*; *Nobbe v. Jta. Directores, supra*; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Por lo tanto, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Oficina de Ética Gubernamental v. Martínez Giraud, supra*; *Super Asphalt v. AFI y otros, supra*.

Ahora bien, las determinaciones de derecho pueden ser revisadas en su totalidad. *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627; Sec. 4.5 LPAU, 3 LPRA sec. 9675. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Rolón Martínez v. Supte. Policía, supra*; *Torres Rivera v. Policía de PR, supra*. Esto, pues el Tribunal Supremo ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: (1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales. *Íd.*; *Oficina de Ética Gubernamental v. Martínez Giraud, supra*.

Finalmente, destacamos que el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Lo anterior ya que la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia. *Íd.*

**-B-**

La Sección 3.13 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9653, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), dispone que "**[l]as Reglas de Evidencia no serán aplicables a las vistas administrativas, pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento**" (énfasis nuestro). Por tanto, los procedimientos administrativos son de naturaleza flexible, por lo que rige una norma liberal en la aplicación de las reglas con el único propósito de descubrir la verdad. *Otero v. Toyota*, 163 DPR 716, 732 (2005); *J.R.T. v. Aut. De Comunicaciones*, 110 DPR 879 (1981).

**-C-**

Dispone el Código Civil de 2020 que, el contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. Art. 1230 del Código Civil de 2020, 31 LPRA sec. 9751. A tenor con esto, las partes pueden establecer las cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarias a las leyes, a la moral ni al orden público. *Íd.*, Art. 1232, sec. 9753.

Una vez las partes prestan su consentimiento, estas quedarán obligadas al cumplimiento de la obligación pactada, ya que "[l]o acordado en los contratos tiene fuerza de ley entre las partes…". *Íd.*, Art. 1233, sec. 9754. Lo anterior es un concepto conocido en latín como *pacta sunt servanda*, el cual establece que las obligaciones que se derivan de contrato perfeccionado rigen sobre todas las partes contratantes y no pueden ser unilateralmente alteradas. M. García Cárdenas, *Derecho de Obligaciones y Contratos*, 2da edición, Puerto Rico, MJ Editores, 2017, p. 20.

Además, el Código Civil establece que no existe contrato hasta tanto las partes manifiestan su consentimiento sobre el objeto y la causa. Art. 1237 del Código Civil de 2020, 31 LPRA sec. 9771. En virtud de ello, para que un contrato sea válido, se requiere que concurran tres elementos esenciales, a saber: (1) consentimiento de los contratantes, (2) objeto cierto que sea materia del contrato y (3) la causa de la obligación que se establezca. *Aponte Valetín v. Pfizer Pharmaceuticals, LLC*, 208 DPR 263, 284 (2021). La falta de alguno de ellos será causa de nulidad del contrato y, por tanto, inexistente en el orden jurídico. *Rosario Rosado v. Pagán Santiago*, 196 DPR 180, 188 (2016).

**-D-**

Según nuestro ordenamiento jurídico, los vicios de la voluntad comprenden el error, el dolo, la violencia y la intimidación. Art. 285 del Código Civil de 2020, 31 LPRA sec. 6191. Si en un negocio jurídico media la presencia de alguno de estos vicios, el acuerdo es anulable si dicho vicio fue determinante para su otorgamiento. *Íd.*, Art. 293, sec. 6212. Específicamente, el dolo se define como la acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado. *Íd.*, Art. 292, sec. 6211. Por lo tanto, "**constituye dolo callar sobre una circunstancia importante relacionada con el objeto del contrato**". *Bosques v. Echevarría*, 162 DPR 830, 836 (2004).

No todo tipo de dolo produce la nulidad del contrato. Para que el dolo produzca la nulidad del negocio jurídico, deberá ser grave y no haber sido empleado por las dos partes contratantes. *Íd.* En cambio, el dolo incidental no produce la nulidad del contrato, sino que sólo obliga a quien lo empleó a indemnizar por los daños y perjuicios. *Íd.*, Art. 294 del Código Civil de 2020, 31 LPRA sec. 6213. Esto es así, ya que este tipo de dolo no tiene una influencia decisiva

en la esencia de la obligación. *Colón v. Promo Motor Imports, Inc.*, 144 DPR 659, 667 (1997). De hecho, en este tipo de casos existe la voluntad de contratar de la parte perjudicada, pero hay engaño en el modo en que se celebra el negocio jurídico. Por lo cual, el contrato de todas formas se hubiera celebrado, pero no bajo las mismas condiciones. *Íd.*

Nuestro Tribunal Supremo dispuso en *Colón v. Promo Motor Imports, Inc.*, supra, pág. 668, que independientemente del tipo de dolo que se alegue, corresponde a quien reclama dicha conducta la responsabilidad de la prueba. No obstante, esto no significa que el dolo debe establecerse de manera directa, ya que puede demostrarse mediante inferencia o por evidencia circunstancial. *Íd.*, pág. 669.

En cuanto a la determinación de si existe dolo que anula el consentimiento, nuestro más alto foro ha resuelto que se debe considerar, entre otras cosas, la preparación académica del perjudicado, así como su condición social y económica, y las relaciones y el tipo de negocios en que se ocupa. *Citibank v. Dependable Ins. Co., Inc.,* 121 DPR 503, 518 (1988). Además, puede que en un caso el dolo no surja de un simple hecho, sino del conjunto y la evolución de circunstancias y manejos engañosos. *Acosta & Rodas, Inc. v. PRAICO,* 112 DPR 583 (1982). De la misma manera, puede ser que lo que aparenta ser incidental desde la perspectiva general del contrato en cuestión sea en realidad esencial para los contratantes, por lo que el engaño o incumplimiento con alguno de los elementos de la contratación puede dar lugar a la variante del dolo causante. M. Albaladejo, *Comentarios al Código Civil español,* 6ta ed., Madrid, Ed. Reus, 1967, T. VIII, Vol. 2, pág. 431.

**-E-**

Según las normativas previamente discutidas sobre los contratos, es relevante enfatizar que la invalidez de un contrato es

una sanción legal que, mediante una decisión judicial, priva a un negocio jurídico de sus efectos propios por adolecer de un vicio originario, esencial e intrínseco al acto. Art. 341 del Código Civil de 2020, 31 LPRA sec. 6311.

El negocio jurídico puede ser nulo o anulable. En esencia, es nulo si: (1) el objeto, la causa o el consentimiento son inexistentes; (2) el objeto o la causa son ilícitos; (3) carece de las formalidades exigidas por la ley para su validez; o (4) es contrario a la ley imperativa, la moral o el orden público. Por el contrario, es anulable si: (1) el otorgante tiene incapacidad de obrar, (2) **concurre algún vicio de la voluntad**, o (3) el acto adolece de un defecto de forma no solemne. *Íd.*, Art. 342, sec. 6312.

Además, la sentencia que invalida un negocio jurídico obliga a las partes a restituir, con sus frutos y productos, lo recibido en virtud del negocio jurídico. *Íd.*, Art. 346, sec. 6316.

**-F-**

Es pertinente destacar que, por el contrato de compraventa, la parte vendedora se obliga a transferir a la parte compradora el dominio de un bien, y esta a su vez se obliga a pagar un precio cierto. Art. 1274 del Código Civil de 2020, 31 LPRA sec. 9941. Es importante destacar que una de las obligaciones de la parte vendedora es "**garantizar al comprador que el bien vendido tiene las cualidades prometidas y que está libre de defectos que disminuyen o destruyen su valor o la aptitud para su uso ordinario o convenido**" (énfasis nuestro). *Íd.,* Art. 1287, sec. 9991.

**-G-**

El Departamento de Asuntos del Consumidor de Puerto Rico (DACO) fue creado con el objetivo principal de vindicar e implementar los derechos de los consumidores. Ley Núm. 5 de 23 de abril de 1973, Ley Orgánica del Departamento de Asuntos del Consumidor, 3 LPRA sec. 341 et seq. A tales fines, la ley habilitadora

del DACO le otorgó al Secretario o la Secretaria la facultad de atender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos en el sector privado de la economía. 3 LPRA sec. 341e(c). En ese sentido, la agencia cuenta con amplios poderes para adjudicar las querellas ante su consideración, y conceder los remedios pertinentes conforme a derecho. 3 LPRA sec. 341 e(d).

De acuerdo con lo anterior y en virtud de la Ley Núm. 7 de 24 de septiembre de 1979, conocida como la Ley de Garantías de Vehículos de Motor, 10 LPRA secs. 2051 et seq., el DACO adoptó el Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 7159 del 6 de junio de 2006, (Reglamento Núm. 7159). Este cuerpo reglamentario tiene como finalidad los siguientes objetivos: (1) proteger adecuadamente a los consumidores y sus inversiones en la adquisición de vehículos de motor; (2) procurar que todo consumidor que compre un vehículo de motor en Puerto Rico, le sirva para los propósitos que fue adquirido, y que reúna las condiciones mínimas necesarias para garantizar la protección de su vida y propiedad; y (3) prevenir las prácticas ilícitas en la venta de vehículos de motor en Puerto Rico. Regla 2, Reglamento 7159, *supra.* Además, aplica a toda persona natural o jurídica que se dedique a la venta y servicio de vehículos de motor nuevos o usados en Puerto Rico y debe interpretarse liberalmente a favor del consumidor. Reglas 3-4, Reglamento 7159, *supra*; *Polanco v. Cacique Motors*, 165 DPR 156, 163-164 (2005).

En lo que respecta al presente caso, el Reglamento Núm. 7159 del DACO le impone a todo vendedor de vehículos de motor ciertas obligaciones. Entre estas, la obligación de informar a cada consumidor el estado y las condiciones de la unidad que está adquiriendo. Concretamente, la Regla 30 establece que:

> 30.1 – Todo vendedor estará obligado a notificarle por escrito al consumidor si el vehículo de motor usado que interesa, ha sido usado como taxi, vehículo de transportación pública, vehículo de servicio público, de alquiler, de demostración o cualquier otra finalidad que conlleve un uso irregular o excesivo.
>
> 30.2. – Todo vendedor de un vehículo de motor usado, el cual haya sido impactado y reparado posteriormente, deberá indicarlo verbalmente y notificarlo por escrito al consumidor en el contrato de compraventa.

De otro lado, la Regla 37 del Reglamento Núm. 7159 expone que "[n]ada de lo dispuesto en este Reglamento limitará en forma alguna el derecho del consumidor a ejercer cualquier acción que le reconozca las leyes generales o especiales del Estado Libre Asociado de Puerto Rico, así como las acciones de saneamiento por evicción, **saneamiento por vicios ocultos** o redhibitoria y cualesquiera otras que reconozca el Código Civil de Puerto Rico" (énfasis nuestro). Regla 37, Reglamento 7159, *supra*.

**-III-**

En el presente caso, debemos determinar si el DACO incidió al decretar la rescisión del contrato de compraventa entre el señor Flores Cabán y Munich, bajo el fundamento de que la parte recurrente incurrió en dolo grave al momento de la contratación. Específicamente, al no informarle al recurrido que el vehículo de motor usado que estaba adquiriendo había sido declarado "pérdida total" por el seguro original lo que significó que careciera de todo tipo de garantía.

Es ampliamente conocido que los tribunales debemos ser deferentes en torno a las decisiones administrativas, pero tal deferencia cederá cuando la determinación no esté basada en evidencia sustancial, cuando el ente administrativo haya errado en la aplicación de la ley y cuando la actuación resulte arbitraria, irrazonable e ilegal. *Torres Rivera v. Policía de Puerto Rico*, supra. Sin embargo, tras una evaluación exhaustiva del expediente bajo nuestra consideración y de la normativa aplicable al caso, no

encontramos razones que justifiquen preterir la deferencia otorgada a la decisión administrativa. En consecuencia, llegamos a la conclusión de que el DACO no incidió en su decisión. Explicamos.

En síntesis, la parte recurrente sostuvo como primer señalamiento de error que el DACO no actuó correctamente al admitir en evidencia el estimado de Autogermana[21], debido a que no fue autenticado, conforme requieren las Reglas de Evidencia, por lo que careció de garantías de confiabilidad. Según la Sección 3.13 de la LPAU, *supra*, **las Reglas de Evidencia no son aplicables a las vistas administrativas y los principios fundamentales de evidencia podrán utilizarse** para lograr una solución rápida, justa y económica del procedimiento. Por lo tanto, la jueza administrativa no estaba obligada a aplicar las Reglas de Evidencia en la vista administrativa celebrada en este caso. En este sentido, no se cometió el error alegado.

Como segundo señalamiento de error, la parte recurrente alegó que el DACO erró al concluir que hubo dolo grave, ya que la evidencia no respalda que Munich conocía que la unidad había sido declarada "pérdida total" antes de la compraventa. Por el contrario, adujo que la prueba desfilada ante el DACO demostró que reveló todas las condiciones que conocía sobre la unidad al momento de la venta, incluyendo el historial de impactos, las reparaciones de hojalatería y pintura, y la falta de garantía del fabricante, y que pesar esta divulgación, el señor Flores Cabán decidió adquirir la unidad. Sin embargo, no coincidimos con su planteamiento.

Si bien es cierto que Munich le informó al señor Flores Cabán que el auto había sido impactado y reparado, **no le reveló que anteriormente había sido declarado "pérdida total"**. Aparte de esto, de los documentos suscritos por el recurrido, como la *Nota*

---

[21] *Íd.*

*aclaratoria,* la *Garantía con el fabricante* y la *Declaración de impacto,* no surge que la unidad fue declarada "pérdida total" debido a un impacto anterior.[22] Según el Reglamento Núm. 7159 del DACO, **todo vendedor tiene la obligación de informar <u>verbalmente y notificar por escrito</u> a cada consumidor las condiciones de la unidad que está adquiriendo**. Regla 30.2, Reglamento 7159, *supra.* Asimismo, el Código Civil establece que, en un contrato de compraventa, "**la parte vendedora tiene la obligación de garantizar al comprador que el bien vendido tiene las cualidades prometidas y que está libre de defectos que disminuyen o destruyen su valor o la aptitud para su uso ordinario o convenido**" (énfasis nuestro). Art. 1287 del Código Civil de 2020, 31 LPRA sec. 9991. Por consiguiente, concluimos que Munich incumplió con las obligaciones que le impone el DACO en relación con la venta de vehículos usados, así como también con las disposiciones previamente citas del Código Civil relacionadas con el contrato de compraventa.

Cabe destacar que, así mismo como Munich tuvo conocimiento acerca de que la unidad: (1) fue impactada, (2) fue sometida a trabajos de hojalatería y pintura, y que (3) no tenía garantía del fabricante, es razonable concluir que debió conocer que, precisamente, ese impacto causó que el vehículo fuera declarado "pérdida total" y que no contara con la garantía del fabricante, especialmente considerando que se trataba de un automóvil con tan solo 3,694 millas recorridas.

Además, el presidente de Munich, el señor Márquez Villanueva, cuenta con vasta experiencia en la venta de autos, concretamente con veinticinco (25) años de experiencia, según su propio testimonio.[23] Por lo tanto, coincidimos con la determinación

---

[22] *Íd.,* págs. 83-85.
[23] *Íd.,* pág. 65.

de la agencia de que éste debió saber que, al adquirir una unidad a través del proceso de subasta, esta podía haber sido declarada pérdida total anteriormente.

Es forzoso concluir que el automóvil fue declarado "pérdida total" y que este dato esencial no se le informó al señor Flores Cabán. De hecho, al recurrido no se le notificó verbalmente ni por escrito que el BWM del 2021 había sido declarado "pérdida total" por el seguro original. Así que Munich mantuvo en silencio una circunstancia importante relacionada con el objeto del contrato, por lo que incurrió en dolo grave. *Bosques v. Echevarría*, supra, pág. 836 (2004). Además, no podemos perder de perspectiva que, en la vista adjudicativa celebrada por el DACO, el señor Flores Cabán aseguró que no hubiera adquirido el vehículo si hubiera sabido que previamente fue declarado "pérdida total" por el seguro.[24]

Como tercer error, la parte recurrente alegó que, en caso de proceder la orden decretando la rescisión del contrato, la obligación de Munich se limitaría a devolver la cantidad recibida de parte del señor Flores Cabán, es decir, la suma de $64,995.00, independientemente del monto del préstamo concedido por PenFed. Esto se debe a que Munich no puede reembolsar al recurrido más de lo recibido, ya que esta medida no está contemplada en el Código Civil como una forma válida de restitución. Según el Código Civil, las partes deben devolver las prestaciones recibidas, y en este caso, la prestación recibida por Munich fue de $64,995, ni más ni menos.

Efectivamente, las partes están obligadas a devolver lo recibido en virtud del negocio jurídico. Art. 346 del Código Civil de 2020, 31 LPRA sec. 6311. Por lo tanto, tras la recisión del contrato de compraventa, Munich debe reembolsar al señor Flores Cabán todas las mensualidades que ha pagado hasta la fecha a PenFed,

---

[24] *Íd.*, págs. 52 y 62.

incluyendo el interés legal correspondiente a la suma de dinero desde el momento en que se ordenó el pago hasta que se satisfaga completamente. Asimismo, Munich debe liquidar cualquier saldo pendiente que el señor Flores Cabán tenga con PenFed para liberarlo de su deuda. Finalmente, el señor Flores Cabán deberá entregar el vehículo objeto de la controversia a Munich. De esta manera, las partes se devolverán lo recibido en virtud del contrato de compraventa. Es importante destacar que cualquier suma adicional que Munich pague a las partes en concepto de intereses es una consecuencia directa de su comportamiento doloso.

**-IV-**

Por los fundamentos que anteceden, *confirmamos* la determinación del DACO.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones